PHILLIP H. BENDER V. KINGMAN & COMPANY ET AL.

FILED MAY 21, 1902. No. 9,810.

Commissioner's opinion, Department No. 1.

1. **Debtor:** TRANSFER OF PROPERTY: INTENT TO DEFRAUD: PROTECTION: CONSIDERATION. Where a debtor transfers his property with intent to defraud his creditors, a purchaser from such debtor will be protected only to the extent of the consideration with which he has parted before receiving notice of the fraudulent intent of his grantor. -

2. **Testimony:** CONVERSATIONS. Admission of testimony regarding conversations had in the presence of the purchaser of a fraudulent vendor pending the transfer of the property, charging him with notice of the fraudulent intent of his vendor, *held* not error.

3. **Constructive Fraud.** The doctrine of constructive fraud does not obtain in this state, as by virtue of section 20, chapter 32, Compiled Statutes, the question of fraudulent intent is made a question of fact, and not of law.

4. **Fraudulent Intent:** STATUTE: QUESTION OF FACT: DIRECTION OF VERDICT. Fraudulent intent, declared to be a question of fact by statute, does not differ in kind or degree from other questions of fact; and when the evidence adduced in a case upon the question of fraudulent intent is so conclusive that reason-

able minds can not differ as to the conclusion to be drawn therefrom, it is not error for the court to direct a verdict accordingly.

5. **Evidence.** Evidence examined, and *held* that a peremptory instruction given by the trial court was properly given.

ERROR from the district court for Thurston county. Tried below before EVANS, J.   Rehearing of case reported in 62 Nebr., 469.   *Reaffirmed.*

*George G. Bowman, Mell C. Jay* and *R. G. Strong,* for plaintiff in error.

*James H. McIntosh, contra.*

KIRKPATRICK, C.

This is a replevin action brought in the district court of Thurston county by Phillip H. Bender, plaintiff in error, against Kingman & Co. and John H. Mullen, defendants in error.   Mullen was the sheriff of Thurston county, and had levied upon a stock of goods under writs of attachment issued in suits brought by Kingman & Co. against Weiser Bros., and in the action plaintiff in error obtained possession of the stock of goods claiming to be the vendee of Weiser Bros.   An opinion was filed in this case July 10, 1901 (62 Neb., 469.)   On application of plaintiff in error a rehearing was allowed, and the case is again presented for consideration.

The facts and circumstances with respect to the transfer to Bender by Weiser Bros. are set out somewhat at length in the opinion of this court in the case of *Kingman & Co. v. Weiser Bros.,* reported in 48 Nebr., 834, and no further statement of such facts need be made herein.   The trial court directed a verdict for defendants in error, and such action and the rulings of the court upon the admissibility of certain evidence, are assigned as error in this proceeding.

The first contention of plaintiff in error is that the court erred in admitting in evidence conversations had between

two witnesses who were called by defendants in error and Weiser Bros. It is disclosed by the evidence that these conversations were had in the hardware store during the progress of the inventory being taken of the goods which plaintiff in error had purchased from Weiser Bros. The evidence discloses that at that time plaintiff in error had parted with no consideration for the goods. Certain papers had been drawn up and deposited in the bank at Pender in escrow, to be held until the invoice was completed, so as to ascertain the value of the goods, to determine for what amount plaintiff in error should execute his notes to Weiser Bros., in addition to a contract for the purchase of certain lands which he had or was to assign. This testimony was undoubtedly admitted for the purpose of showing that plaintiff in error had full knowledge of the fraudulent intent of Weiser Bros. in making the sale before he had parted with any consideration. His duty upon having this knowledge brought directly home to him was immediately to stop further proceedings, and by proceeding with the transfer, and by surrendering his papers and giving his notes with full knowledge of the fraud of Weiser Bros., he became a party to such fraud. *Hedrick v. Strauss*, 42 Nebr., 485; *Karll v. Kuhn*, 38 Nebr., 539, 540; *Temple v. Smith*, 13 Nebr., 513, 514. This evidence was clearly admissible for the purpose of showing the knowledge of plaintiff in error of the fraud which Weiser Bros. were about to perpetrate on their creditors, and its admission was not error.

The next contention of plaintiff in error is that the court erred in directing a verdict for defendants in error. This contention is based upon two grounds: (1) that the evidence was not sufficient to establish fraud; that, in any event, it was not a case in which the evidence was of such a conclusive character that reasonable minds could not differ, and therefore was a case which must have been given to the jury; and (2) that under the statutes of this state, the question of fraudulent intent must necessarily be submitted to the jury for determination.

Regarding the first point, it is sufficient to say that from an examination of the evidence we are led to the conclusion that it is of such a character that had the question been submitted to the jury, and a verdict returned for plaintiff in error, it would have been the duty of the court to set such verdict aside. This being true, it was not error for the trial court to direct a verdict for defendants in error, unless, under the statutes of this state, the question of fraudulent intent must necessarily be submitted to the jury for determination. The answer to this question depends upon a construction of section 20, chapter 32, Compiled Statutes, 1899, which is in the language following: "The question of fraudulent intent in all cases arising under the provisions of this chapter shall be deemed a question of fact, and not of law, and no conveyance or charge shall be adjudged fraudulent, as against creditors or purchasers, solely on the ground that it was not founded on a valuable consideration." Difficulties in arriving at the true import and meaning of language employed in a statute may sometimes best be removed by reference to the conditions prevailing at the time, and with reference to which the legislature enacted the statute regarding the purpose and meaning of which uncertainty may exist. The contention of plaintiff in error, in effect, is that by reason of the statute quoted the question of fraudulent intent, in every case tried to a jury, must be submitted to the jury for determination, and that this is so, even though the evidence establishing a fraudulent intent is so conclusive that reasonable men could draw but one conclusion therefrom, and that it is not within the power of the court to resolve the question into one of law and direct a verdict. The correctness of this contention is the question requiring determination.

Our section above quoted is identical in phraseology with the provision of the statute of frauds of the state of New York. Michigan and other states have provisions substantially the same. Before the enactment of the New York statute, the courts of that state, following the Eng-

lish cases, recognized a two-fold classification of fraud, namely, actual fraud and constructive fraud. Actual fraud is defined by an eminent writer as that where a party intentionally or by design misrepresents a material fact, or produces a false impression, in order to mislead another or to obtain an undue advantage. In every such case, there is a positive fraud in the truest sense of the term. There is an evil act with an evil intent. 1 Story, Equity Jurisprudence, sec. 192. But constructive fraud was recognized as having an actual, potential existence in the absence of all fraudulent intent. Contracts, although not originating in any actual evil design or contrivance to perpetrate a positive fraud or injury upon other persons, but having a tendency to deceive or mislead other persons, violate private or public confidence, or impair or injure public interests, were deemed equally reprehensible with positive fraud, and were therefore prohibited as within the same reason and mischief as acts and contracts done *malo animo.* 1 Story, Equity Jurisprudence, sec. 258.

In the case of *Reade v. Livingston,* 3 Johns. Ch. [N. Y.], 481, 500, decided in 1818, before the enactment of the New York statute (our section 20), Chancellor Kent said: "The conclusion to be drawn from the cases is, that if the party be indebted at the time of the voluntary settlement, it is presumed to be fraudulent in respect to such debts, and no circumstance will permit those debts to be affected by the settlement, or repel the legal presumption of fraud. The presumption of law, in this case, does not depend upon the amount of the debts, or the extent of the property in settlement, or the circumstances of the party. * * * I should rather conclude, that the fraud in the voluntary settlement was an inference of law, and ought to be so, as far as it concerned existing debts; but that, as to subsequent debts, there is no such necessary legal presumption, and there must be proof of fraud in fact." *Freeman v. Pope,* 5 Ch. App. Cases [Eng.], 536.

In *Hamilton v. Russell,* 1 Cranch [U. S.], 309, it is said: "The want of possession [in the grantee] is not

merely evidence of fraud, but is a circumstance *per se* which makes the transaction fraudulent in point of law." *Sturtevant v. Ballard,* 9 Johns. [N. Y.], 339.

It is apparent to us that it was for the purpose of abolishing and avoiding legal presumptions of fraud as recognized in the foregoing cases that section 20 of our chapter 32 and similar provisions in other states were enacted.

In the case of *Babcock v. Eckler* (decided by the court of appeals of New York), 24 N. Y., 623, Sutherland, J., commenting upon the case of *Reade v. Livingston, supra,* said: "Subsequently, by section 4, title 3, chapter 7* [our section 20], it was declared that the question of fraudulent intent, in all cases arising under the provisions of that chapter, should be deemed a question of fact * * *. The question in this case arises under the provisions of this chapter of the Revised Statutes, which treats 'of fraudulent conveyances and contracts, relative to goods and chattels and things in action.' No decision or series of decisions, then, can make the question of fraud in this case a question of law, or establish that there is a legal presumption of fraud from the facts and circumstances found by the referee; for the statute declares that the question of fraud shall be deemed a question of fact, and by declaring it to be a question of fact, in effect declares that there is no such legal presumption."

The doctrine of constructive fraud seems to have been based in a principle of preventive justice, seeking to do away with the possibility of fraud by a declaration that certain acts and contracts, whether accompanied by fraudulent intent or not, shall be fraudulent and void. In some cases actual fraud was repelled. *Bowes v. Heaps,* 3 Ves. & B. [Eng.], 117, 119.

From an examination of the growth of the law upon the subject of fraud, it would seem that at first the intent was a conclusive presumption of law from many particular circumstances; next, a rebuttable presumption of law from a variety of circumstances; and, lastly, it was by statute

* 2 Revised Statutes (1875), 137.

required to be inferred as an argumentative conclusion of fact without the aid of any legal presumption. What was the design and effect of the statute under consideration? Simply this, and as we conceive it, no more: to declare that no contract shall be declared void for fraud except upon proof of fraud in fact. It is the same as if the legis-lature had said the doctrine of constructive fraud is hereby abrogated, and henceforth the courts shall take cognizance only of actual fraud, fraud as a fact to be alleged and proved as other facts, instead of being judicially deduced as a conclusion of law from certain given facts and cir-cumstances. Fraud being a question of fact, and never the result of legal presumption, is it necessary to be sub-mitted to the jury for determination, even in cases where the proof as to fraudulent intent is so strong and over-whelming that reasonable men can not come to different conclusions? It is difficult for us to see why the statute should be given such construction. If the interpretation already given to the statute is correct, to so construe it would be to do violence to the intent of the law-framers. The statute says that the question of fraudulent intent shall be deemed one of fact. It does not say that it shall be deemed a question of fact for the jury. And, though it did, the obstacles in the way of holding that the jury's verdict in a jury trial can alone determine the existence of a fraudulent intent, would not be more easily overcome.

As an elementary proposition, in jury trials, it is for the court to decide questions of law, and the jury to decide questions of fact. But it will readily be admitted that, under our law and the decisions of this court, all ordinary material questions of fact can be submitted to the jury only when the evidence would warrant a finding either way. If a finding in any other but one way would be clearly and manifestly against the evidence, or in conflict with all the evidence, it would be set aside, and in such case it is the duty of the court to determine in advance of submission the status of the proof, and withdraw from the consideration of the jury any question regarding which

there is no conflict. But a peremptory instruction by the court does not violate the rule that questions of fact are exclusively for the jury, or make facts alleged and proved questions of law in the sense in which the construction of a written instrument is a question of law. Peremptory instructions are not only permissible, but mandatory, when the evidence would not warrant another verdict than that directed.

Does the statute under consideration make an exception to this rule of cases of fraudulent intent? So far as the rules of evidence are concerned, it seems to be well established by authority that no higher or greater degree of proof is required to establish fraudulent intent than other material facts. In civil cases, a preponderance of the evidence is all that is required. *Reed v. Noxon*, 48 Ill., 323; *Carter v. Gunnels*, 67 Ill., 270. It is true that proof of fraud must be clear and explicit, and the inference of fraud can not be based on mere suspicion; but this does not make fraudulent intent a question of fact different in kind and degree from other questions of fact. Wherever fraudulent intent is a material part of a plaintiff's case, without an allegation of such intent, he fails to state a cause; without proof, he can not recover.

By the statute fraudulent intent is made a question of fact. But, manifestly, the question of fact to decide which is the province of the jury must be a question that arises from the evidence. By a question arising from the evidence can be understood only a question regarding which there is sufficient evidence pro and con to warrant a finding one way or the other. It can not be a conceded fact, nor yet a fact regarding which there can be no reasonable dispute. And if fraudulent intent, declared by statute to be a question of fact, is, in a case tried to a jury, so conclusively shown by the evidence that all reasonable and unbiased men must believe it to exist, the case becomes one in which it is proper for the court to direct a verdict.

To accept the construction contended for, would involve the adoption of a distinct procedure in the trial of cases

involving fraudulent intent. If the question, as a matter of necessity, must always be submitted to the jury, it follows as a corrollary that the return of the jury, no matter how erroneous or inconsistent with the evidence, must be final; or if not final, and the court has the right to set aside the verdict as clearly wrong, the question must needs be again submitted to another jury, with a possible like result. Thus there would be one procedure for questions of fraud, and another for other questions of fact. This could not have been the intention of the legislature, and it is not the law. A fact is a fact wherever met, and the only purpose of the statute was to provide that fraud, like other facts, should be pleaded, proved and found as a fact, and not drawn as a presumption of law from other established facts without regard to the intent of the parties participating in the transaction.

The conclusion here reached in no way conflicts with the prior decisions of this court. The case of *Monteith v. Bax*, 4 Nebr., 166, principally relied on by plaintiff in error to sustain his contention, involved the question of the intent of Adam Bax to defraud his creditors by transferring valuable personal property to his wife. The court below refused to submit the question of fraud to the jury, directing a verdict on the theory that the transfer was not fraudulent. In the opinion by this court the evidence adduced at the trial was set out with sufficient detail to show that the transfer was tainted with fraud as against the creditors of the transferrer, and, as that was the real question raised and to be determined in the case, it was held that the court below should have submitted the question of fraud to the jury as one of fact to be determined from all the evidence. But after a careful examination of that opinion we can not find in it any authority for assuming that had the evidence wholly failed to raise any question of fraudulent intent the judgment would still have been reversed, but, on the contrary, reversal was necessary because of the presence of evidence conflicting with the verdict directed by the court. Nor can we find anything in that opinion in con-

flict with the conclusion to which we have already come, that, when the evidence shows conclusively either that there was or was not fraudulent intent it is not error for the court to direct a verdict. *Oliver v. Eaton*, 7 Mich., 108, 113, cited in *Monteith v. Bax, supra*, determines a like question.

In the case of *Hedman v. Anderson*, 6 Nebr., 392, cited by plaintiff in error, it is held: "A mortgage of goods and chattels, with possession and power of sale in the mortgagor, is void as against his creditors." In the opinion, after showing that fraudulent intent must ordinarily be established by circumstantial evidence, it is said: "But the questions as to the existence of facts showing a fraudulent intent are alone for the jury to determine and not for the court. If, however, certain facts are conceded to exist, the question of their sufficiency to indicate a fraudulent intent becomes a question of law which the court must determine. But the question of the credibility of witnesses rests entirely with the jury." In that case but three things are determined,—that a mortagage fraudulent upon its face must be so pronounced by the court; that, where conceded facts show fraud, it is for the court so to instruct the jury; and that, where there is a question in fact as to the existence of a fraudulent intent, such question, with the credibility of the witnesses, is for the jury.

In *Williams v. Evans*, 6 Nebr., 216, it is said: "If the instrument on its face is one the law will not sanction as against creditors, it is the duty of the court to pronounce it fraudulent as to them"; but, "where an instrument is not void upon its face the question of fraudulent intent is a question of fact which should be submitted to the jury," thus following the rule that where there is a question of fact about which reasonable minds might differ the case is one for the jury. *Connelly v. Edgerton*, 22 Nebr., 82, and *Davis v. Scott*, 22 Nebr., 154, are to the same effect, and contain nothing contrary to the rule which we have announced in this case.

A critical examination of the cases cited by plaintiff

in error will show that various courts, having in mind that fraudulent intent was a question of fact and not a presumption of law, and in attempting to make clear that distinction, have made use of expressions which would seem to support the contention of plaintiff in error. But so far as they have any bearing upon the question, they are cases in which the question of fraudulent intent was a disputed question, arising from the evidence, and should be submitted to the jury. No case has been cited, and we believe none can be found, which holds that where fraudulent intent is conceded, or where the evidence establishing it is of such a conclusive character that reasonable minds could not differ in their conclusions, the question must still be submitted to the jury-for determination. It is the settled rule in this state that where the evidence is uncontradicted, and all reasonable men must draw the same conclusion thereform, it is not error for the court to direct a verdict in favor of the party entitled thereto, under the pleadings and proof. *Elliott v. Carter White-Lead Co.,* 53 Nebr., 458. In the case at bar the evidence showing fraudulent intent being without substantial conflict, and of such a character that reasonable men would not differ as to the conclusion to be drawn therefrom, it was not error for the court to direct a verdict for defendants in error.

No error appearing in the proceedings of the trial court, the former opinion is adhered to.

HASTINGS and DAY, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the opinion heretofore rendered .by this court, affirming the judgment of the district court, is adhered to.

AFFIRMED.